**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-74-DLB**

**LUIS ARNOLDO ESCOBAR MEJIA,**                                    **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**JAMES MAYDAK, et al.,**                                    **RESPONDENTS**

* * * * * * * * * *

## I.   INTRODUCTION

This matter is before the Court on Petitioner Luis Arnoldo Escobar Mejia's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses (Docs. # 7 and 10), and Petitioner having filed his Reply (Doc. # 9), this matter is now ripe for review.[2]  For the following reasons, the Court will **grant** the Petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Luis Arnoldo Escobar Mejia is a native and citizen of Guatemala.  (Doc. # 1 ¶ 37). Mejia entered the United States without inspection in November of 2017 as an unaccompanied minor.  (*Id.*).  In June of 2018, DHS served Mejia with a Notice to Appear before an Immigration Judge ("IJ") for removal proceedings.  (Doc. # 7-1 at 2).  Although

---

[1]     Petitioner files this action against Samuel Olson, Director of the Chicago Field Office, Immigration and Customs Enforcement ("ICE"), Todd Lyons, Acting Director of ICE, Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"), Pamela Bondi, Attorney General of the United States, and James Maydak, Warden, Boone County Jail.

[2]     Although Petitioner filed a Reply on March 3, 2026 (Doc. # 9) addressing the Response filed by Respondents Bondi, Lyons, and Olson (Doc. # 7), Petitioner did not file a Reply to the Response filed by Respondent Maydak (Doc. # 10) and the time for doing so has passed.  In his Response, Maydak argues that he is not Mejia's immediate custodian.  (*Id.*).  This is uncontested by Mejia.  Therefore, the Court will address only the Response filed by Respondents Bondi, Lyons, and Olson (Doc. # 7).

this Notice to Appear initiated removal proceedings against him, Mejia is not subject to a final order of removal. (Doc. # 7 at 2). Since his initial entry in 2017, Mejia has resided in Indiana, where he presently lives with his partner and their U.S. citizen daughter. (Doc. # 1 ¶ 37).

On January 10, 2026 Mejia pulled into a gas station on his way home from work. (*Id.* ¶ 41). While Mejia was parked at the gas station, a Tipton County, Indiana police officer informed him that Mejia's license plate cover was obscuring his license plate. (*Id.*). When the officer asked for Mejia's driver's license, Mejia responded that he did not have one. (*Id.*). As a result, the officer took Mejia into custody. (*Id.*). While Mejia was in state custody, ICE issued a detainer and, ultimately, Mejia was transferred to ICE custody. (*Id.* ¶ 42). Mejia remains in ICE custody and is currently detained without bond at the Boone County Jail in Burlington, Kentucky. (*Id.* ¶ 43).

On February 18, 2026, Mejia filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (*Id.*). In his Petition, Mejia argues that he is unlawfully detained at the Boone County Detention Center and requests that the Court order his immediate release or, alternatively, that he receive a bond hearing before an IJ. (*Id.* ¶¶ 49-50). On February 19, the Court directed Respondents to respond to the Petition. (Doc. # 6). Respondents having filed their Responses (Docs. # 7 and 10), and Mejia having filed his Reply to one Response (Doc. # 9), and the time for replying to the other (Doc. # 10) having elapsed, this matter is ripe for the Court's review.

III.   ANALYSIS

Mejia's Petition alleges that his present detention deprives him of his right to due process under the Fifth Amendment and violates the Immigration and Nationality Act

("INA").[3]  (Doc. # 1 ¶¶ 72-79, 92-105).  Specifically, Mejia contends that his detention is unlawful and therefore requests that the Court order his immediate release.  (*Id*. ¶ 49).  Mejia alternatively requests that, if the Court does not find immediate release appropriate, he be granted a constitutionally adequate bond hearing.  (*Id*. ¶ 50).

### A.      Relevant Framework

At its core, habeas provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  And this remedy is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  A district court may grant a writ of habeas corpus to any person who shows that he is detained within the court's jurisdiction in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  The Supreme Court has recognized that habeas relief extends to noncitizens.  *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

Enacted in 1952, the INA consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law."  U.S. Citizenship and Immigration Services, Immigration and Nationality Act (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=Th e%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Rep resentatives.   Relevant to Mejia's Petition, Congress has established two statutes,

---

[3]      Mejia also asserts a claim under the Administrative Procedure Act ("APA").  (*Id.* ¶¶ 80-91). Respondents argue that APA claims may not proceed in combination with Mejia's habeas corpus claims. (Doc. # 7 at 7).  Because the Court, for the reasons that follow, finds that Mejia is entitled to relief under the Fifth Amendment, the Court need not address whether the APA affords him that same relief.

codified in Title 8, which govern the detention of noncitizens pending removal proceedings—8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It states, in pertinent part:

**(b)     Inspection of applicants for admission**

**(2)     Inspection of other aliens**

**(A)     In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)     May continue to detain the arrested alien; and

(2)     May release the alien on—

(A)     Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

4

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

> (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

> (2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 lies at the heart of Mejia's Petition.  Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have the right to request a bond hearing before an IJ.  Conversely, under 8 U.S.C. § 1225(b)(2)(A), all aliens deemed to be applicants for admission *must* be detained.  As noted *supra*, Mejia, a noncitizen who has lived in the United States for nearly nine years, has been detained by ICE and is being held at the Boone County Detention Center.  The question, then, is whether Mejia must be detained without a hearing under § 1225(b)(2), or whether he has the right to request a meaningful bond hearing pursuant to § 1226.[4]

---

[4]      The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens.  The question before the Court is a narrower one, to wit, whether those noncitizens—specifically Petitioner Mejia—are entitled to

**B.    Statutory Interpretation**

The basic facts of this case are not in dispute.  Rather, the central dispute concerns which statute applies to Mejia's detention.  Mejia argues that he is being detained in the Boone County Jail in violation of the INA and the Fifth Amendment.  (Doc. # 1 ¶ 9). Conversely, Respondents contend that Petitioner is properly detained pursuant to the mandatory detention scheme of § 1225(b)(2).  (Doc. # 7 at 2).  Thus, the Court must determine whether § 1225(b)(2) governs Mejia's detention.  This determination raises a question of statutory interpretation.  In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading of the statute." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024).   Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court first turns to the plain language of the statute.  The Court begins by looking at the first words one may read—the title.  A "[c]ourt gives each and every word meaning, and this includes the title." *Barrera*, 2025 WL 2690565, at *4.  While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *see also  Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section

---

request a bond hearing before an IJ prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

6

are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotations and citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]"  Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]"  Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens who are *presently* "seeking admission" into the United States,[5] while § 1226 focuses on the apprehension and detention of those noncitizens already present in the country.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *7 (W.D. Ky. Nov. 27, 2025) ("The added word of 'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already.").

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States."  Under § 1225(b)(2)(A) any applicant for admission who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted" must be detained.  The analysis then, is twofold.  For a noncitizen to be mandatorily detained under § 1225(b)(2)(A), they must be an applicant for admission who is also seeking admission.  Other district courts have acknowledged that this "question is puzzling at first blush.  How can an 'applicant for admission' not 'seek admission?'" *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025).  However, this question is answered by looking to the statutory definition.  To be an applicant for admission, "[a]ll that's needed is presence

---

[5]      This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways," leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts." *Barrera*, 2025 WL 2690565, at *4.

without admission—in other words, it applies to the great number of undocumented immigrants who currently live here." *Id*. By contrast, seeking admission "might mean something more than that—some active desire or process toward admission." *Id*. One's *status* as an "applicant for admission" under the definitional language of § 1225(a)(1) is distinct from the *act* of "applying for" or "seeking" admission. Congress provided a clear definition of aliens who are "applicants for admission." 8 U.S.C. § 1225(a)(1). And this definition turns on an individual's physical presence in the United States. *Id.* Thus, an alien present in the United States can qualify as an "applicant for admission" under § 1225 without also "seeking admission" by necessity. Because Mejia is neither an "arriving alien" nor "seeking admission" into the United States, the mandatory detention provisions contained § 1225(b)(2) do not apply to him.

Respondents disagree with this reading and take the position that merely because Petitioner is an "applicant for admission" according to the INA, he is subject to the mandatory detention provisions of § 1225(b)(2). (Doc. # 7 at 4). Respondents' interpretation of § 1225(b)(2)(A), therefore, calls for mandatory detention of *every* noncitizen present in the United States who has not been lawfully admitted. (*See id.* ("Section 1225 mandates the detention of any 'applicant for admission' who cannot show that they are 'clearly and beyond a doubt entitled to be admitted.'") (quoting 8 U.S.C. § 1225(b)(2)(A))). The Court finds this interpretation much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

8

In reaching this conclusion, Respondents misconstrue, or ignore entirely, the phrase "seeking admission." They argue that a noncitizen who is merely present in the United States is necessarily also seeking admission. But the use of the present progressive term "seeking" "implies action." *Barrera*, 2025 WL 2690565 at \*4; *see also Diaz v. Marinez,* 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."); *Edahi*, 2025 WL 3466682 at \*8 ("Seeking means 'to go in search of' and is synonymous with 'pursue.'" (quoting Webster's Dictionary (11th ed. 2024))).

Furthermore, the INA defines the term "admission" as "the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Given that the word "entry" is left undefined by the INA, courts interpret it according to its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *see also Gustafson v. Alloyed Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *J.G.O.*, 2025 WL 3040142, at \*3 (quoting *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989); *Enter*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

Thus, it cannot be said that Mejia, a noncitizen who has resided in the United States for nearly nine years is "actively seeking admission." *See id.* ("'[S]eeking admission' requires an alien to continue to want to go into the country. The problem . . . is that [the petitioner] is already here; you can't go into a place where you already are.").

9

Furthermore, seeking lawful status or relief from removal is not the same as "seeking admission."  *See Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021) (observing that "[l]awful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other").  Thus, a noncitizen present in the United States may seek lawful status without simultaneously seeking admission.  *Id.*  (noting that a noncitizen who received Temporary Protected Status was not therefore constructively admitted to the United States).

Numerous district courts, including this Court on several occasions, have come to the same conclusion.  *See Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is no logical interpretation that would find that Lopez-Campos was actively 'seeking admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission.").  Likewise, the Seventh Circuit has agreed with this reading.  *Castañon-Nava v. U.S. Dep. Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("[p]ut another way, 'U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'") (emphasis in original) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).  To adopt Respondents' interpretation of § 1225(b)(2)(A) would render the phrase "seeking admission" "mere

surplusage by equating it to 'applicant for admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at \*6; *see also Castañon-Nava*, 161 F.4th at 1061 (noting that such a construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction"); *J.G.O.*, 2025 WL 3040142, at \*3 ("[T]his is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission' . . . suggests that it must mean something distinct.").  The Court declines to adopt such an expansive reading of § 1225(b)(2)(A).[6]

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" remains in detention "pending a decision on whether the alien is to be removed from the United States."  The plain meaning of the statute is clear and applicable to Mejia—an alien who was arrested and detained by ICE and remains in detention pending removal proceedings.  (*See* Doc. # 1).  This is further bolstered by the record.

That § 1225(b)(2)(A) applies to noncitizens seeking admission into the United States while § 1226 applies to those noncitizens who are already present in the United States comports with the broader structure and context of our immigration law.  *Castañon-Nava*, 161 F.4th at 161-62.  Indeed, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Leng May Ma v. Barber*,

---

[6]    The Court notes that in their Response, Respondents repeatedly reference *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), an opinion from the Board of Immigration Appeals. Pursuant to the Supreme Court's decision in *Loper Bright*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous."  603 U.S. at 412-413.

357 U.S. 185, 187 (1958) (noting that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, *irrespective of its legality*") (emphasis added).

Here, on the June 11, 2018, Notice to Appear issued to Petitioner, DHS checked the box labeled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien."  (Doc. # 7-1 at 1) (emphasis added).  This supports this Court's conclusion and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens.  583 U.S. at 298, 303.  Additionally, when Mejia was taken into custody, DHS served him with an I-200 arrest warrant pursuant to 8 U.S.C. § 1226.  (Doc. # 7-2 at 1).  Respondent's new post hoc position that Mejia's arrest and detention are governed by § 1225(b)(2)(A) instead is simply "impermissible." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025.  The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention.  8 U.S.C. § 1226(c).  If, as Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then

12

why did Congress even bother passing that legislation?  If Respondents' reading of §
1225 is correct, then the addition of the Laken Riley Act would be superfluous.  The Laken
Riley Act added a mandatory detention requirement, "in an otherwise discretionary
Section."  *Barrera*, 2025 WL 2690565, at *4.  As other courts have noted,

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been
> admitted, regardless of how long they have been here, then adding §
> 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will
> not find that Congress passed the Laken Riley Act to 'perform the same
> work' that was already covered by § 1225(b)(2).

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12);
*see also id*. ("Respondents' interpretation of the statutes would render [the Laken Riley
Act] superfluous); *Ariza v. Noem*, No. 4:25-cv-165-RGJ, 2025 WL 3722014, at *6 (W.D.
Ky. Dec. 23, 2025) ("If Section 1225(b)(2)(A) governed certain noncitizens as the United
States claims it does, the Laken Riley Act would have been redundant and
unnecessary."); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *7 (D. Mass.
July 7, 2025) ("Such an interpretation, which would largely nullify a statute Congress
enacted this very year, must be rejected."); *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 221
(D. Mass. 2025) ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were
alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025
amendment would have no effect. This is a presumptively dubious result."); *Selvin
Adonay E.M. v. Noem et al*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12,
2025) ("the presumption against superfluity is at its strongest because the Court is
interpreting two parts of the same statutory scheme, and Congress even amended the
statutory scheme this year when it passed the Laken Riley Act.").  This Court agrees with
its sister courts.

13

Respondents fail to elaborate when, if § 1225(b)(2) applies to *every single* noncitizen's detention proceeding, § 1226 would ever, if at all, come into play. [7] The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page. *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

The Court acknowledges that Respondents cite a string of nonbinding district court decisions supporting its interpretation. For example, Respondents cite *Mejia Olalde v. Noem et al.*, a case from the Eastern District of Missouri. (Doc. # 7-4 at 36). There, the court agreed with the Government's interpretation of § 1225(b)(2)(A), concluding that the petitioner was an applicant for admission because he was present in the United States and had not been legally admitted. No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). In its analysis, the court looked not towards whether the petitioner was "seeking admission" but whether he was an "applicant for admission." *Id*. at *2. Its reasoning rested in part on the conclusion that it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission." *Id*. at *3.

---

[7] Respondents make various public policy arguments on why noncitizens who have entered the country without detection should not be treated more favorably than those who entered lawfully. (*See, e.g.*, Doc. # 7-4 at 56). While valid arguments, the text, as clearly indicated above, "does not currently reflect such public policy considerations." *Maldonado*, 2025 WL 2374411, at *12. "Rather, such arguments may be made to Congress if Respondents would like to amend or repeal § 1225 or § 1226, but such policy arguments are not reflected in the Laken Riley Act amendment … passed only a few months ago." *Id*.

Yet, as the Court discussed above, "to be detained pursuant to Section 1225(b)(2)(A), that is *precisely* what the text requires." *Edahi*, 2025 WL 3466682, at *12. "Holding as *Olalde* does would require the Court to ignore the plain statutory text. But Courts must give effect to every word in the statute. . . In ignoring the very words of section 1225(b)(2)(A) *Olalde* defies this principle." *Id*.

Respondents also cite *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025). (Doc. # 7-4 at 36). However, the Court is no more persuaded by this decision. Specifically, the Court is unconvinced because *Rojas* did not conclude that the recent addition of the Laken Riley Act would be rendered superfluous if § 1225(b)(2)(A) required mandatory detention of all noncitizens. *See Rojas*, 2025 WL 3033967, at *9 ("[L]egislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996. Indeed, nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case."). This Court, and many others, disagree with that interpretation. *See Edahi*, 2025 WL 3466682, at *11 ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect. . . *Rojas*' reading of the Laken Riley Act underscores this very premise.") (internal quotations omitted).

Finally, pertinent legislative history reinforces the Court's conclusion. *See Loper Bright,* 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is."). Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country." Library of Congress, *Immigration Detention: A Legal Overview* (Sep. 16, 2019), https://www.congress.gov/crs-

15

product/R45915#_Ref17891326.   In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the noncitizen "had been lawfully admitted into the country by immigration authorities."   *Id*. Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant."   *Id*.   In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a).

It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed all persons who entered the United States without inspection "applicants for admission" under § 1225, that the Government changed course.   U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos*, 2025 WL 2496379 at *5 ("For the past 30 years, the Government has applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect.").   This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id*. at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]").   Thus, the enforcement history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country, which is "powerful evidence that interpreting [the INA] in that way is natural and reasonable[.]" *Abramski v. U.S.*, 573 U.S. 169, 202-203 (2014) (Scalia, J., dissenting).

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5. Therefore, the Court finds that Petitioner is not subject to § 1225(b)(2)(A). Rather, the facts of the case make clear that his detention is governed by § 1226(a).[8]

### C. Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Mejia, the Court must now determine whether his present detention violates his due process rights. Respondents contend that Mejia is not entitled to any more due process than Congress has authorized. (Doc. # 7 at 5). And because Respondents insist that Mejia's detention is mandatory under § 1225(b)(2)(A), they conclude that he is receiving all the process he is due. (*Id.*). However, as discussed above, Mejia's detention is governed by § 1226(a).

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons,

---

[8] The Court acknowledges that the Fifth Circuit Court of Appeals has reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). However, this decision provides, at most, persuasive authority. *See Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (noting that holdings of other circuit courts of appeal do not bind courts in the Sixth Circuit). And another Circuit Court has disagreed with the Fifth Circuit's reasoning—albeit in a different procedural context. *See Buenrostro*, 2026 WL 323330, at *4 n. 8 (recognizing the Seventh Circuit's conflicting decision in *Castañon-Nava v. U.S. Dep't. of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025)). The Sixth Circuit is poised to take up the statutory interpretation issue raised by Petitioner in *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025). Indeed, the Sixth Circuit held oral arguments in *Lopez-Campos* on March 18, 2026 pursuant to an expedited schedule. *See* Doc. # 42, No. 25-1965. In the absence of an authoritative decision from the Sixth Circuit Court of Appeals, the Court respectfully declines to adopt the Fifth Circuit's holding in *Buenrostro-Mendez*.

regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Mejia has a cognizable liberty interest in avoiding detention. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Second, the risk of erroneous deprivation of that interest is high if Mejia is not afforded a bond hearing. *See Edahi*, 2025 WL 3466682, at *14 (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25-cv-9982 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but

18

certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at \*7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at \*10 (D. Minn. May 21, 2025)).  Accordingly, all three factors weigh in Mejia's favor.  As other courts have concluded, Mejia's detention without a bond hearing violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to an individualized custody determination.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing** under 8 U.S.C. 1226(a) **within seven (7) days of the date of this Order**; and

(3)    Respondents shall file a Status Report with this Court **on or before April 8, 2026**, to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, whether bond was granted or denied, and if denied, the reasons for that denial.

This 25th day of March, 2026.



Signed By:

_David L. Bunning_    *DB*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-74 Order granting habeas.docx